**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW HUZAR, ) | |
| ) | |
| Plaintiff, ) | No. 17 C 05383 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| GROUPON, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Groupon operates a website that allows users to buy tickets and book reservations for various sporting and entertainment events, as well as for hotel stays. R. 1, Compl. at ¶ 18.[1] In July 2015, Andrew Huzar, who suffers from spina bifida, attempted to reserve a wheelchair-accessible hotel room on Groupon's website but found that none were available. *Id.* ¶¶ 4, 19.[2] After unsuccessfully contacting Groupon to try resolving the problem, Huzar brought suit against Groupon for violating the public-accommodation sections of the Americans with Disabilities Act (ADA). *Id.* ¶ 44. Groupon moves to dismiss the claim on the ground that it itself is not a place of public accommodation under the ADA, nor does it operate one. R. 23, Def. Mot. to Dismiss; *see* R. 24, Def. Br. at 2. For the following reasons, the motion is granted.

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.
[2]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331.

**I. Background**

For the purposes of this motion, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In July 2015, Huzar visited the Groupon website and tried to reserve a room in the Red Lion Hotel through a "Groupon Getaway" deal. Compl. ¶¶ 19-20. When Huzar navigated through the website, he noticed that there were no options for handicap-accessible rooms. *Id.* Huzar has spina bifida and uses a wheelchair to get around, so without an accessible room, he could not stay at the Red Lion using the deal that Groupon had advertised. *See id.* ¶ 4. So Huzar emailed Groupon and asked, "Is there any way to book a wheelchair accessible room with this offer?" *Id.* ¶ 21. Groupon responded that it was sorry, but that "unfortunately handicap-accessible rooms are not available." *Id.* ¶ 22. Since then, Huzar has been deterred from trying to reserve hotel rooms through Groupon's website. *Id.* ¶ 23.

About a year later, in July 2016, Huzar received an email, which advertised a "Groupon Deal" for New York Jets tickets at the MetLife Stadium. Compl. ¶ 25. He visited the website to buy tickets to one of the available Jets games, but discovered a complete lack of accessible-designated tickets. *Id.* ¶¶ 27-28.[3] He looked around the

---

[3]The complaint specifies that the August 11, August 27, and October 23 games were available. The August games were preseason games. In the October game, former Chicago Bear Matt Forte (who was then playing for the Jets) rushed for 101 yards and a touchdown, and also caught four passes (one for a touchdown). That performance put him in the elite company of "Marshall Faulk, Marcus Allen, Thurman Thomas and Herschel Walker as the only players with 8,000 yards rushing, 4,000 yards receiving and 20 TD receptions." *See* http://www.nfl.com/gamecenter/2016102306/2016/REG7/ravens@jets#menu=gameinfo%7Cc Ccontent%3A0ap3000000726296&tab=recap. Forte retired earlier this year, finishing with 14,468 yards from scrimmage, good for 28th best in NFL history. He will be eligible for NFL Hall of Fame balloting in five years.

website but could not find any way for disabled customers to purchase accessible seating. *Id.* ¶ 29. Even though Huzar knows that MetLife Stadium has accessible seating, Groupon's website did not have any method to view the availability of designated accessible seats. *Id.* ¶¶ 30-31. So even though accessible seats exist, Huzar could not get the tickets for those seats through Groupon's platform. *Id.* ¶ 32.

Although Huzar still occasionally wants to buy tickets or reserve hotel rooms through Groupon, he does not because Groupon fails to offer accessible options for people with disabilities. *See* Compl. ¶ 24. By failing to offer accessible ticketing and reservation options, Huzar claims, Groupon is violating the ADA by excluding him from the services, programs, and accommodations it offers to the public. *Id.* ¶¶ 34, 44. And as the provider of ticketing and reservation services to places of public accommodation, Huzar alleges that Groupon serves as a "nexus" for individuals to access those places. *Id.* ¶ 37. At present, Groupon has supposedly not modified its site or practices to accommodate patrons that need accessible options. *Id.* ¶ 45. Huzar wishes to represent a class of other disabled persons denied access to accessible ticketing options through Groupon's website. *See id.* ¶¶ 45-46.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."

3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

#### 1. "Operates" a Public Accommodation

Congress enacted the Americans with Disabilities Act "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Generally speaking, the ADA forbids disability discrimination in employment, in state and local government

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

services, and in public accommodations. Public-accommodations discrimination is the issue in this case. Specifically, Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, advantage, or accommodations of any place of public accommodation … ." 42 U.S.C. § 12182(a); *Wigginton v. Bank of America Corp.*, 770 F.3d 521, 523 (7th Cir. 2014). This non-discrimination provision applies to "any person who owns, leases (or leases to), or operates a place of public accommodation." § 12182(a).

Hotels and stadiums—like the Red Lion hotel and MetLife Stadium—both are places of public accommodation under the ADA. The ADA's definitional provision specifically deems hotels and stadiums to be places of public accommodation. 42 U.S.C. § 12181(7)(A), (D). But of course, the question in this case is whether *Groupon*—not just the hotel and the stadium—is governed by Title III of the ADA. Remember that Title III applies to not just owners or lessors of public accommodations, but also to anyone who "operates" a public accommodation. § 12182(a). In his response brief, Huzar argues that Groupon "operates" a place of public accommodation.[5] To Huzar's way of thinking, "there can be *multiple* operators

---

[5]Huzar contends that Groupon forfeited its argument against this contention, supposedly because Groupon only raised it in its reply brief. R. 37, Pl. Sur-Reply at 1. There is no forfeiture for two reasons: first, in its opening brief, Groupon did argue that it is an online-only business, so it does not operate a place of public accommodation. Def. Br. at 3. Second, it was the *complaint* that was not clear in advancing the theory of liability, now more clearly presented in Huzar's response brief, that Groupon should be considered an "operator" of a public accommodation under the ADA. *See* Compl. ¶ 37 (invoking what Huzar believes is a "nexus or condu[i]t" theory of liability); *id.* ¶ 41 (invoking regulation concerning ticket sales). Indeed, the complaint's most explicit allegation on what Groupon operates simply said that Groupon "operates a website," *id.* ¶ 18, not a stadium or a hotel. So all Groupon did was

5

of the New York Jets or a vacation getaway." Pl. Resp. at 10 (emphasis added). Groupon, Huzar says, is one of the operators of the stadium where the Jets play and of the Red Lion Hotel. *Id.*

That theory of liability cannot be squared with the plain meaning of the ADA. The problem is *not* that, as a matter of law, there cannot be more than one operator of a public accommodation. The problem is that, on the complaint's allegations, Groupon does not "operate" MetLife stadium or the Red Lion Hotel within the meaning of the ADA. The ADA does not set forth an explicit definition of "operates." *See* 42 U.S.C. § 12181. When a statute does not provide an express definition of a word, federal courts must look to the word's plain meaning. *See Smith v. United States*, 508 U.S. 223, 228 (1993). Dictionaries provide useful guidance in discerning a word's plain meaning. *Id.* (citing to dictionaries to interpret the word "use" in 18 U.S.C. § 924(c)(1)). The Seventh Circuit did just that in interpreting the word "operates" in a similar statutory context as the one presented here.

Specifically, in *Village of Bedford Park v. Expedia*, the Seventh Circuit had to decide whether municipal ordinances that imposed a duty on "operators" of hotels to collect taxes applied to online travel agencies. 876 F.3d 296, 303, 305 (7th Cir. 2017). The online travel agencies had entered into contracts with hotels so that rooms would be made available to the travel agencies to market. *Id.* at 299. Customers used the travel agencies' websites to book the rooms and to directly pay the agencies. *Id.* at 299-300. Several municipalities sought to enforce their tax-collection ordinances,

---

reply to *Huzar* after he expounded on the "operator" theory of liability. That is the very purpose of a reply brief.

which applied to "operators" of hotels, against the online travel agencies. The Seventh Circuit held that the travel agencies were not "operators" of the hotels. *Id.* at 304. In canvassing various dictionary definitions, *Expedia* explained that even the broadest definition of "operators" would not cover the travel agencies, that is, "one who performs a function or exerts power of influence." *Id.* (quoting *Operate*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/operate (last visited Oct. 12, 2017)) (cleaned up). The Seventh Circuit reasoned that the agencies performed just one function (reservations) and did not perform the whole function of running a hotel:

> But the [travel agencies] do not perform the function of running a hotel. They perform one set of functions that a hotel does—making room reservations, processing financial transactions, and handling customer service with respect to those transactions. But that the [travel agencies] engage in one hotel function does not transform them into operators of hotels. We would not say that when a hotel contracts with a cleaning service that orders supplies and hires, schedules, and pays workers, the cleaning service becomes an operator of the hotel.

*Id.*; *see also Pitt Cty. v. Hotels.com, L.P.*, 553 F.3d 308, 313 (4th Cir. 2009) ("The online companies ... have no role in the day-to-day operation or management of the hotels. Thus, they cannot be said to operate the hotels."). Just so here: Groupon sells some of the Red Lion Hotel's room reservations and some of MetLife Stadium's Jets tickets, but it does not "operate" the hotel or the stadium (or the Jets).

Huzar argues that *Expedia* is distinguishable because it is a case about taxes, where ambiguous statutes are strictly construed against the government and in favor of the taxpayer, so the Seventh Circuit was taking a narrow view of the tax

7

ordinances. R. 37, Pl. Sur-reply at 3 (citing *Expedia*, 876 F.3d at 302). In contrast, Huzar argues, the ADA is a form of remedial legislation, so it should be construed broadly. *Id.* But nothing in *Expedia* hints that the Seventh Circuit's decision turned on the anti-tax presumption; it was mentioned in the introduction to the analysis, but then did not surface again. *See id.* at 302, 303-04. Instead, as discussed above, the Seventh Circuit applied the plain meaning of the word "operator." *Id.* at 303-04. That plain meaning applies here too, so the Court holds that Groupon does not "operate" the hotel or the stadium.

### 2. "Nexus" to a Public Accommodation

Huzar offers an alternative theory of liability: Groupon can be held liable under the ADA because there is a "nexus" between "the challenged service" and the "premises of a public accommodation." Pl. Resp. at 12. But what Huzar calls a "nexus theory," *id.*, is not really an alternative theory of liability. Instead, some courts have noted that, in cases where a plaintiff contends that a service is being denied, a "nexus" between the service offered by a public accommodation and the physical premises of the public accommodation is *required* in order to impose liability on a defendant. *See Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1284 n.8 (11th Cir. 2002). In other words, there is no free-standing theory of liability under the ADA that ensnares anyone who "serves as a nexus or conduit for individuals to obtain access to places of public accommodation and is directly linked to places of public accommodation." Pl. Resp. at 13. The cases cited by Huzar only stand for the uncontroversial proposition that the owner (or operator) of a public accommodation cannot evade the ADA by

8

engaging in disability discrimination off-site, such as through its website or in screening participants. *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 949, 952 (N.D. Cal. 2006) (holding that inaccessibility of Target's website to the blind "impede[d] the full and equal enjoyment of goods and services offered in Target stores," because non-blind website users could access information on store location and hours, refill prescriptions and order photo prints for pick-up in stores, and print coupons to use in stores); *Rendon*, 294 F.3d at 1285-86 (holding that a television game-show studio's use of an automated telephone-screening system to screen potential contestants discriminated against hearing-impaired or upper-body mobility-impaired persons). But those do *not* hold that anyone with a "nexus" to the public accommodation, or anyone who is a "conduit" to the public accommodation (to use Huzar's terminology), qualifies as an owner, lessor, or operator of a public accommodation, as required by 42 U.S.C. § 12182(a). The absence of supporting case law is not surprising, because the ADA's pertinent text requires that the plaintiff be discriminated against "*by*" any person who "owns, leases (or leases to), or operates a place of public accommodation." § 12182(a) (emphasis added). The ADA's text does not support a "nexus" or "conduit" theory of liability.[6]

---

[6]After briefing was completed on the dismissal motion, Huzar filed a supplement that discussed the Supreme Court's recent decision in *South Dakota v. Wayfair,* 138 S. Ct. 2080 (2018). *See* R. 49, Pl.'s Suppl. Memo. In *Wayfair,* the Supreme Court held that States may require online retailers to collect sales taxes even if the retailer does not have a "physical presence" in the State, so long as the retailer "avails itself of the substantial privilege of carrying on business" in the State. *Id.* at 2099 (cleaned up). *Wayfair* interpreted the Constitution's Commerce Clause, and has no particular relevance to the ADA issue in this case. At most, *Wayfair* is an example of how courts take into account the ubiquity and breadth of online commerce in applying legal principles. *See id.* at 2095 ("The dramatic technological and social changes of our increasingly interconnected economy mean that buyers are closer

### 3. Applicability of Federal Regulations

Huzar's final argument is that a federal regulation has brought Groupon within the purview of ADA liability. Specifically, Huzar points to 28 C.F.R. § 36.302, which sets forth a general requirement that any public accommodation must make reasonable modifications to its policies, practices, and procedures to enable access to individuals with disabilities, and also details more specific requirements for certain public accommodations. As relevant here, one of the specific requirements is directed at "public accommodation[s] that sell[] tickets" for events. *Id.* § 36.302(f)(1)(ii). Those public accommodations must ensure that individuals with disabilities have an opportunity to buy tickets for accessible seating that is equal to the opportunity of non-disabled persons to buy tickets for ordinary seats. *Id.* § 36.302(f)(1)(ii)(A)-(E). Another pertinent specific requirement in § 36.302 covers "places of lodging." *Id.* § 36.302(e)(1). Like buying tickets to events, individuals with disabilities must be able to make accessible-room reservations during the same hours and in the same way as individuals who do not need accessible rooms. *Id.* § 36.302(e)(1)(i).[7]

---

to most major retailers than ever before—regardless of how close or far the nearest storefront." (cleaned up)). But this Opinion does not question that the ADA prohibits off-site disability discrimination by a public accommodation (that is, discrimination that does not occur on the physical premises but still prevents someone from equal access to the public accommodation). The point is that Groupon does not own, lease (or lease to), or operate the place of accommodation at issue. So *Wayfair* is inapposite here.

[7]When the ADA was enacted, Congress instructed the Attorney General to issue regulations to implement Title III, including the "standards applicable" to the covered "facilities." 42 U.S.C. § 12186(b). There is no need to opine on the validity of the regulation at issue in this case, or the deference owed to it, because it does not cover Groupon in any event, as explained in this Opinion.

Neither the events-ticketing requirement nor the room-reservations requirement, however, applies to Groupon. The text of both requirements distinguishes between the "public accommodation" offering the events or the rooms and "third party" sellers. With regard to tickets, the regulation instructs the public accommodation to make accessible-seat tickets available to "third-party ticketing services." 28 C.F.R. § 36.302(1)(ii)(D).[8] With regard to hotel rooms, the regulation instructs that the public accommodation is bound by the reservation-systems requirements even if the reservations are made "through a third party." *Id.* § 36.302(e)(1). So, for both tickets and hotel rooms, the plain text of the regulation recognizes the difference between the public accommodation and third-party sellers. Indeed, several of the directives could not reasonably be fulfilled by a third-party like Groupon, which is not in control of the venue or the entire block of rooms or tickets. *See id.* § 36.302(e)(1)(iii) (hold accessible rooms open until all other rooms rented); *id.* § 36.302(f)(1)(ii)(D) (make accessible seats available for in-person ticket sales at the facility); *id.* § 36.302(f)(5)(i) (hold accessible seats open unless certain conditions apply). Groupon is not covered by the regulation.[9]

---

[8]It is worth noting that this interpretation is consistent with the Justice Department's guidance on the ticketing regulation. Without deciding (because it is not necessary to do so) what deference is owed to the Department's interpretation of the ticketing regulation, the guidance makes clear that the third-party seller is not covered by the regulation: "When a venue provides tickets to a third-party ticket vendor, including Internet-based vendors, the venue must include comparable tickets for accessible seats," and if the venue fails to do so, "the third-party vendor is encouraged, *but not required*, to contact the venue to obtain tickets for accessible seats." Dep't of Justice, *ADA 2010 Revised Requirements: Ticket Sales* (July 2011) (emphasis added) (available at www.ada.gov/ticketing_2010.pdf.)

[9]Because the regulation does require that the public accommodation make accessible seats or rooms available for purchase via third-party services on the same basis as non-accessible seats or rooms, in theory the regulation should increase the availability of those seats and rooms to third-party vendors like Groupon. *See* 75 Fed. Reg. at 56276 ("Because

11

### 4. Leave to Amend

Under the Federal Rules, a Court "should freely give leave" to amend a complaint. Fed. R. Civ. P. 15(a)(2). That permission is "especially advisable" when sought after the dismissal of the "first complaint." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport, Com'n*, 377 F.3d 682, 687 (7th Cir. 2004). It is not clear that Huzar can amend the complaint to address the problems discussed in this Opinion, but he should be given a chance to do so.[10]

### IV. Conclusion

For the reasons discussed, the current complaint fails to adequately state a claim against Groupon. The motion to dismiss is granted. For now, the dismissal is without prejudice. Huzar may file an amended complaint by August 20, 2018. If he does not, then the dismissal will convert into a dismissal with prejudice and final

---

§ 36.302(f)(1) of the final rule requires venue operators to make available accessible seating through the same methods of distribution they use for their regular tickets, venue operators that provide tickets to third-party ticket vendors are required to provide accessible seating to the third-party ticket vendor. This provision will enhance third-party ticket vendors' ability to acquire and sell accessible seating for sale in the future.")

[10]In its reply brief, Groupon presented an argument regarding its Terms of Use. Def. Reply at 6-7. But the Terms of Use are not "central" to Huzar's claims, *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002), so at the least, the dismissal motion would have had to be converted into a summary judgment motion before considering the Terms.

judgment will be entered. A status hearing is set for August 22, 2018, at 8:45 a.m. to check on whether an amended complaint was filed.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 30, 2018